IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPEED TRAC TECHNOLOGIES, INC.,        )
                                       )
                    Plaintiff,         )
v.                                     )        Case No. 08-212-KHV
                                       )
ESTES EXPRESS LINES, INC.,            )
                                       )
                    Defendant.         )

## ORDER

### I. Introduction

Pursuant to Fed. R. Civ. P. 45(c)(3), a non-party, Yellow Transportation, Inc. ("Yellow"), has filed a motion for a protective order seeking to quash or at least modify a discovery subpoena duces tecum (**doc. 1**). The subpoena in question was issued out of the District of Kansas in connection with an unfair competition case pending in the Western District of North Carolina.[1] The subpoena was issued at the request of the defendant, Estes Express Lines, Inc. ("Estes"), and commanded the testimony of a corporate representative of Yellow pursuant to Fed. R. Civ. P. 30(b)(6) on numerous topics, and the production of certain documents, all in connection with the lawsuit filed by the plaintiff, Speed Trac Technologies, Inc. ("Speed Trac"). Estes has filed a response to the instant motion (doc. 5),

_____

[1]Yellow's motion states that the underlying case is pending in the *Middle* District of North Carolina. However, court records reflect the case was transferred to the *Western* District of North Carolina on March 4, 2008 (*see* doc. 48 filed in Case No. 07-417 in the Middle District of North Carolina). The case number in the Western District of North Carolina is 08-101.

and Yellow has replied (doc. 6). Speed Trac has taken no position, at least in this court, with regard to enforcement of the subject subpoena.

## II. Background

In the underlying case, Speed Trac alleges that Estes breached a nondisclosure agreement, misappropriated alleged trade secrets, and committed unfair and deceptive trade practices. The alleged trade secret at issue concerns a patented method for trucking companies to weigh freight on a forklift and transmit weight data wirelessly to a computer via radio frequency, which ensures that customers are invoiced for the proper weight and which also eliminates the need for manual entry of the information.

The basic facts giving rise to Speed Trac's claims are as follows. In February 2004, Speed Trac performed a brief demonstration of one of its automated freight weighing systems at Estes' Richmond, Virginia terminal. In late March through at least late April of that same year, Speed Trac also conducted a ten-system pilot project at Estes' Charlotte, North Carolina terminal. Estes signed a nondisclosure agreement on April 28, 2004. Speed Trac alleges Estes misappropriated trade secrets by developing its own automated weighing system.

Highly summarized, the procedural history underlying the instant motion is as follows.[2] Estes originally served a subpoena duces tecum on Yellow on January 8, 2008,

---

[2]In the instant motion, Yellow did not provide much in the way of procedural history. However, in its response, Estes included a detailed recitation of the procedural history leading up to the filing of the instant motion, which Yellow did not challenge in its reply. The court, therefore, adopts Estes' version of the procedural history.

commanding deposition testimony on twenty-two topics and production of three categories of documents. Yellow responded identifying a Rule 30(b)(6) designee and stating it was compiling documents that might be relevant. Yellow claimed, however, that the date for the deposition might not work. By agreement of the parties, the deposition was postponed.

On January 28, 2008, counsel began discussions regarding the scope of the deposition topics, specifically focusing on Topics 6, 9-11, and 14. Estes offered to narrow the scope of the topics as had previously been done for another non-party freight carrier and to protect all information disclosed by Yellow as "attorney's eyes only." Estes later provided Yellow with a revised list of topics. However, the parties were unable to reach an agreement regarding the deposition.

On February 27, 2008, Estes served a new subpoena on Yellow. Late in the week of March 10, 2008, Yellow informed Estes that, if the five disputed topics were abandoned by Estes, then Yellow would make a representative available on all the remaining topics. Estes declined, but again informed Yellow that the "attorney's eyes only" option was still available. Thereafter, Yellow stated it intended to move to quash the subpoena and, before it did so, Estes should have a new subpoena issued from Kansas, which Estes did. Yellow then filed the instant motion.

### III.  Analysis and Discussion

Fed. R. Civ. P. 45(c)(3)(A)(iv) states that a court "must quash or modify" a subpoena if it "subjects a person to undue burden." Non-parties responding to a Fed. R. Civ. P. 45

subpoena are generally offered heightened protection from discovery abuse.[3]  Whether a subpoena imposes an undue burden upon a witness is a case-specific inquiry that "turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."[4]  "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure."[5]

A.    Document Requests

Estes requests that Yellow produce (1) all *correspondence* with Speed Trac, Norman Technologies, Inc., and David Ridling (the system's inventor) with regard to a system for weighing freight; (2) all *documents referencing* Speed Trac, Norman Technologies, Inc., or David Ridling with regard to a system for weighing freight; and (3) all *agreements with* Speed Trac, Norman Technologies, Inc., or David Ridling with regard to a system for

---

[3]*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 2122437, at *4 (D. Kan. July 20, 2007) (citing Fed. R. Civ. P. 45(c)(1) (requiring a party serving a subpoena to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and imposing mandatory sanctions if this directive is not followed), and *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1497 n.2 (10th Cir. 1983) (recognizing, in dicta, that "discovery from non-parties is often more inconvenient and expensive than it is from parties" but that "the same type of information can still be obtained")).

[4]*Id.* at *5 (quoting *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003)).

[5]*Goodyear Tire & Rubber Co.*, 211 F.R.D. at 662-63.

weighing freight.  Yellow argues the requests are overly broad and irrelevant since they are not limited to any specific period of time.

The above-referenced document requests are facially over broad since they are not limited to a specific period of time.  Although Yellow implies the court could (and should) modify the subpoena, the court declines to do so, as neither Estes nor Yellow have seen fit to provide the court enough information to make that judgment call.  Rather, Estes may serve another subpoena on Yellow which narrows the scope of the requests to a relevant period of time.

    B.    Scope of Inquiry

Estes requests that Yellow produce a corporate representative or representatives to testify on 14 topics.  As to topics 6, 9-11, and 14,[6] Yellow argues these topics seek proprietary and trade secret information that is completely irrelevant to the allegations and defenses in the underlying suit.

Although Rule 45 does not explicitly include lack of relevance as a reason for quashing a subpoena, it is well settled that the scope of discovery under a subpoena is the

---

[6]These topics seek testimony regarding: (6) a general description of the capabilities of Yellow's system for weighing freight and transmitting data and a general description of the components and software of the system; (9) a description of the real-time capabilities of Yellow's system; (10) the timeline for the development and implementation of Yellow's system; (11) the status of any "cross-dock" capabilities for Yellow's system; and (14) the identity of the manufacturer of the various components and a general description of their involvement in Yellow's system.

same as the scope of discovery under Fed. R. Civ. P. 26(b).[7]  Rule 26(b)(1) provides that

"[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense . . . . Relevant information need not be admissible at the trial if the

discovery appears reasonably calculated to lead to the discovery of admissible evidence."

The court must examine whether the information sought in a subpoena duces tecum is overly

broad or seeks irrelevant information under the same standards set forth in Rule 26(b).[8]

Relevancy, of course, is broadly construed for pretrial discovery purposes.  Thus, at

least as a general proposition, "a request for discovery should be considered relevant if there

is 'any possibility' that the information sought may be relevant to the claim or defense of any

party."[9]  "A request for discovery should be allowed 'unless it is clear that the information

sought can have no possible bearing' on the claim or defense of a party."[10]  "When the

discovery sought appears relevant, the party resisting the discovery has the burden to

establish the lack of relevance by demonstrating that the requested discovery (1) does not

come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2)

is of such marginal relevance that the potential harm occasioned by the discovery would

---

[7]*P.S. ex rel. Nelson v. The Farm, Inc.*, No. 07-2210, 2007 WL 4570872, at *2 (D. Kan. Dec. 27, 2007) (citations omitted); *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003); *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 662.

[8]*Phalp v. City of Overland Park, Kan.*, No. 00-2354, 2002 WL 1162449, at *3-*4 (D. Kan. May 8, 2002) (applying general principles of overbreadth and relevance to subpoena duces tecum).

[9]*Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001) (citations omitted).

[10]*Id.* at 689-90 (citations omitted).

outweigh the ordinary presumption in favor of broad disclosure."[11]   The question of relevancy naturally "is to be more loosely construed at the discovery stage than at the trial."[12]  "A party does not have to prove a prima facie case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence."[13]

Estes argues that, in the underlying action, what Speed Trac ultimately deems to be a trade secret are the concepts disclosed in its patent.  Estes argues that, to determine whether such concepts are indeed trade secrets, North Carolina courts rely on several factors, including:  (1) the extent the information is known outside the plaintiff's business; (2) the value of the information to business and the plaintiff's competitors; and (3) the ease or difficulty with which the information could be acquired or duplicative.[14]  Estes argues that it seeks to confirm that Yellow is indeed using handheld electronic devices to key in weight information for freight, where the idea came from, whether it is real-time (a function that Speed Trac contends is unique to them), when it was implemented, whether the materials are off the shelf (as in the case of Estes' system), and whether other technology companies assisted in the development of the system (similar to how others assisted Estes).  Estes also

---

[11]*Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003) (citations omitted).

[12]8 CHARLES ALAN WRIGHT ET AL, FEDERAL PRACTICE AND PROCEDURE § 2008 at 99 (2d ed. 1994).

[13]*Mackey v. IBP, Inc.*, 167 F.R.D. 186, 193 (D. Kan. 1996).

[14]*Wilmington Star-News v. New Hanover Reg'l  Med. Ctr.*, 480 S.E.2d 53, 56 (N.C. Ct. App. 1997).

argues this information is relevant to the issue of whether automated weighing systems are easily duplicated.

The court finds the information regarding Yellow's current system and capabilities for weighing freight appears relevant on it face.  Further, Yellow has not shown that it has no possible bearing on a claim or defense of any party in the underlying case.  Yellow's objection on this ground is overruled.

Yellow also objects to Topics 6, 9-11, and 14 on the grounds they seek trade secrets. Yellow claims Estes is a competitor in the freight carrier business and the only possible use Estes could have for information regarding Yellow's current system for weighing freight is to gain a competitive advantage.  Yellow also argues that Estes does not need the requested information to prove that Speed Trac's system is not a trade secret since the alleged trade secret is already disclosed in an issued United States patent.

Rule 45(c)(3)(B)(i) provides, in pertinent part, that the court "may, on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information."  "There is no absolute privilege for trade secrets and similar confidential information."[15]  The party resisting discovery must first establish that the information sought is a trade secret and then demonstrate its disclosure might be harmful.[16]  "If these requirements are met, the burden shifts to the party seeking

---

[15]*Centurion Indus., Inc. v. Warren Steurer & Assocs.,* 665 F.2d 323, 325 (10th Cir. 1981) (citations omitted).

[16]*Id.*

discovery to establish that the disclosure of trade secrets is relevant and necessary to the action."[17]  The court must also "balance the need for the trade secrets against the claim of injury resulting from disclosure."[18]

In its response, Estes argues that Yellow has failed to establish that the information sought is trade secret information by either affidavit or other evidence.  Estes argues that, nevertheless, non-parties have been required to provide trade secret information to establish the industry standard in this case.  In this regard, Estes cites *Compaq Computer Corp. v. Packard Bell Electronics, Inc.,*[19] a case from the Northern District of California.  Estes also cites *Centurion Industries, Inc. v. Warren Steurer & Associates*, in which the Tenth Circuit Court of Appeals compelled production of non-party witnesses trade secrets when the information "appears needed to provide a basis for Centurion's experts to adequately form an opinion of infringement and to rebut any assertions of non-infringement."[20]

Lastly, Estes claims that it does not intend to ask questions about specific programming, source codes, protocols, and related information, and does not seek to use any of the information sought from Yellow for a competitive advantage.  Estes again offers to enter into a protective order that would restrict access by Estes' personnel.

In its reply, Yellow does not address Estes' argument that Yellow has failed to offer

---

[17]*Id.*

[18]*Id.*

[19]163 F.R.D. 329 (N.D. Cal. 1995).

[20]665 F.2d at 326.

any affidavits or other evidence in an effort to establish that the requested information is trade secret information.  Rather, Yellow claims that Estes does not dispute that the information sought is trade secret information.  Yellow also argues that the *Compaq* case is inapposite to this case as the court found that the issuing party was able to prove that the information sought was both relevant, necessary, and unavailable from any other source.

The court initially finds that, while not controlling, the standard applied in *Compaq* is the same standard which the court is applying in this case, that is, whether the moving party has established that the trade secret information is relevant and necessary.

The court also finds it worth noting that Estes raised the issue regarding Yellow's failure to establish that the information is trade secret information only in a footnote.  The court, therefore, questions the strength of this argument.  Nevertheless, as previously noted, the fact remains that Yellow has not provided any support for its claim that the information sought from Yellow is trade secret information.  Therefore, on the exceptionally sparse record presented, the court is unable to make a finding that the information sought is trade secret information.

The court finds that Estes has established the relevancy of the information sought by Topics 6, 9-11, and 14.  The court is also wholly unpersuaded by Yellow's argument that Estes does not need any of this information in the defense of the underlying action.

Lastly, the court considers Yellow's concern that Estes could use the information for a competitive advantage.  To address such concerns and as suggested by Estes, the court will

require that any information which Yellow deems should be protected shall be designated "confidential" and produced subject to a protective order.  The parties shall confer and then submit a joint proposed protective order to the undersigned magistrate judge as an attachment to an e-mail to *ksd_ohara_chambers@ksd.uscourts.gov* by **June 16, 2008**.  If the parties are unable to agree, they shall submit one joint  "red-lined" draft of a proposed protective order which clearly indicates the disputed provisions by **June 20, 2008**.

As to the remaining topics, 1-5, 7, 8, 12 and 13,[21] prior to filing this motion, Yellow had informed Estes it would be willing to produce a witness to testify to these topics of inquiry.  In its motion, however, Yellow argues these topics are irrelevant on their face, that Estes has already obtained the information requested from other freight carriers, and that responding to the subpoena would subject Yellow to undue burden and expense.

Estes argues that the topics which relate to Yellow's first-hand dealings with Speed Trac are relevant to elements of a trade secret case, including the value of Speed Trac's

---

[21]These topics seek testimony regarding: (1) the general nature of any written and oral communications between Yellow and Speed Trac/Ridling; (2) any nondisclosure agreements between Yellow and Speed Trac/Ridling; (3) demonstrations or testings of Speed Trac's/Ridling's system for weighing freight and Yellow's reaction to such demonstrations or testings; (4) considerations given to whether to purchase, or enter into a license with respect to Speed Trac's/Ridling's system and reasons for any decision about the system; (5) the general characteristics of Yellow's system for weighing freight and transmitting data at the time it first had any contact with Speed Trac/Ridling with respect to any automated procedures for weighing freight, and Yellow's system in 2004; (7) Yellow's relationship with David Ridling; (8) nondisclosure agreements with Speed Trac and David Ridling or William Lyons & Associates; (12) any and all cease and desist letters received from Speed Trac, David Ridling, or William Lyons & Associates and disputes relating to an alleged misappropriation of such entity's or person's trade secrets; and (13) Speed Trac's reputation within the trucking industry.

system.  Estes also argues that testimony concerning Yellow's first-hand dealings with Speed Trac may assist in making credibility determinations.

The court finds the information sought by the remaining topics are not irrelevant on their face.  Further, given the broad scope of discovery, the court finds the information responsive to these topics could reasonably lead to the discovery of admissible evidence on a claim or defense in the underlying action.  Yellow's objection on this ground is overruled.

Yellow argues that forcing it to comply with the subpoena will subject Yellow to undue burden and expense.  A party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.[22]  Yellow has provided only conclusory allegations and has not offered any detailed explanation, affidavit, or other evidence demonstrating that it will suffer undue burden and expense complying with the subpoena.  Yellow's objection on this ground is overruled.

Yellow argues the requested information has been provided to Estes by other sources. Fed. R. Civ. P. 26(b)(2)(C)(i) directs the court to limit discovery, if it determines "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  The court finds the information requested by these topics does not appear unreasonably cumulative or

---

[22] *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004) (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 653 (D. Kan. 2004); *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003) (objecting party cannot sustain burden with boilerplate claims that requested discovery is burdensome); and *McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 646 (D. Kan. 2003) (overruling objection of undue burden based in part on lack of affidavit or other proof)).

duplicative.  Yellow's objection on this ground is overruled.

IV.  Conclusion and Order

In consideration of the foregoing, Yellow's motion (**doc. 1**) is granted as to Estes'

document requests and denied as to the scope of the deposition inquiry.  Yellow's request

for a protective order is granted as set forth above.

IT IS SO ORDERED.

Dated this 3rd day of June, 2008 at Kansas City, Kansas.


s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge